FILED
2022 May-12  PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| Cynthia Evans, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | _____ |
| | ) | |
| BioGX, Inc., | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The plaintiff, Cynthia Evans, hereby brings the following Complaint against the defendant, BioGX, Inc. The plaintiff states as follows:

## PRELIMINARY STATEMENT

This action is brought by the plaintiff, Cynthia Evans (hereinafter "plaintiff" or "Evans"), against the defendant, BioGX, Inc. (hereinafter "defendant" or "BioGX"), to redress: (1) the defendant's refusal to pay commissions the plaintiff earned and is owed; (2) the defendant's promissory, fraudulent and/or negligent suppression of its plan to reduce the plaintiff's commission structure; (3) the defendant's breach of the oral contract it entered into with the plaintiff; and (4) the defendant's unjust enrichment at the plaintiff's expense. The plaintiff also seeks a declaratory judgment and injunctive relief that the Confidential Information and

1

Invention Agreement, which the defendant required the plaintiff to sign as a condition of her employment, is invalid and unenforceable against the plaintiff, especially to the extent the defendant has framed those issues in a "cease and desist" letter the defendant's counsel sent to the plaintiff.

## **PARTIES**

1.  The plaintiff, Cynthia Evans, is an individual over the age of 19 who resides in Trinity, Texas.

2.  The defendant, BioGX, Inc., is an Alabama corporation whose corporate headquarters is located in Birmingham, Alabama.

## **JURISDICTION**

3.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332.

4.  The plaintiff is a resident of Texas, and the defendant is an Alabama corporation.

5.  The amounts in controversy in this case exceed $75,000.

    Accordingly, because of the diversity of the parties and the amounts in controversy, the Court has subject matter jurisdiction over this case pursuant to §1332.

## VENUE

6.    The defendant is an Alabama corporation whose corporate headquarters is located in Birmingham, Alabama and within this district. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). Therefore, venue is appropriate in the Northern District of Alabama.

7.    The plaintiff requests a jury trial on all equitable claims and defenses and all issues triable by a jury.

## STATEMENT OF FACTS

8.    The defendant, BioGX, Inc., is in the business of developing tests for Water Quality, Food Safety and Pharma Quality Control and has begun to develop rapid medical diagnostic tests.

9.    The plaintiff, Cynthia Evans, worked for the defendant as a sales representative with the job tile of Molecular Sales Manager from October 1, 2020 until she was terminated on or about April 22, 2022.

10.    The job duties of the sales representatives or Molecular Sales Manager position included soliciting orders for the products the defendant manufactured, produced, imported or distributed to new and repeat customers.

11.    The products were sold to customers, such as hospitals, laboratories, and physicians' offices, which purchased those products for resale to end-use

customers, such as patients or their insurers.

12. The plaintiff performed her job duties in an exemplary manner.

13. The defendant offered the plaintiff the position of Molecular Sales Manager with a salary of $100,000 per year plus commission of three percent (3%) on new customer sales shipped and revenue received and two percent (2%) on all repeat sales shipped and revenue received plus (3%) commission on the net increase in total direct sales above the annual target.

14. The defendant told the plaintiff that commissions would be capped at $200,000 each year but that she would almost certainly be able to earn this amount each year.

15. The plaintiff accepted the position based on the salary and sales commission plan she was offered.

16. The defendant told the plaintiff that it would pay sales commissions quarterly.

17. At hiring, the defendant required the plaintiff to sign a Confidential Information and Invention Assignment Agreement, which was dated October 1, 2020.

18. Paragraph 8 of this agreement states as follows:

  **No Use of Information to Influence Other Parties.** As described above (including without limitation Section 3(b)). I acknowledge and agree that the Company's Confidential Information includes information relating to the Company's employees, consultants, suppliers, customers and others, and

4

that I will not use or disclose such Confidential Information except as authorized by the Company. I further agree that during the term of the Relationship and *for a period of thirty six (36) months immediately following the termination of the Relationship* for any reason, whether with or without cause, *I shall not use any Confidential Information of the Company to negatively influence* any of the Company's: (i) clients or customers from purchasing Company products or services, or to solicit or influence or attempt to influence any client, customer or other person either directly or indirectly, to direct any purchase of products and/or services to any person, firm, corporation, institution or other entity in competition with the business of the Company; or (ii) suppliers from continuing to supply the Company with products and services as and when needed, or to solicit or influence or attempt to influence any supplier or other person either directly or indirectly to provide products or services to any person, firm, corporation, institution or other entity in competition with the business of the Company.

Attachment 1 (emphasis added).

19.     Paragraph 9 of this agreement states as follows:

**Restricted Activities.** The employee and/or consultant covenants and agrees that:

(a)     During the term of his employment and *up to thirty six (36) months post terminatio*n of employment hereunder; (i) *Employee* and/or consultant *shall not*, without the prior written consent of the Company, directly or indirectly, as an employee, employer, agent, principal, proprietor, general partner, five percent (5%) or more stockholder or owner, consultant, director, corporate officer, alone or in association with others, own, manage, control, generate or participate in the ownership, management, operation or control of, or *work for, or be connected with*, or engage in, any business in which employee and/or consultant will render any services to *any business that is in competition with the business of the Company, its divisions and affiliates*, within any state in which the Company then does business;

Attachment 1 (emphasis added). The agreement does not define the phrases used, such as "in competition with" and "the business of the company."

20.   During December 2022, the defendant told the plaintiff and the other Molecular Sales Managers that the company was preparing a new sales commission plan for 2022 and assured each of them that there would be no significant changes to the sales commission plan.

21.   During January, February and March 2022, the defendant repeatedly reassured the plaintiff and the other Molecular Sales Managers that the new sales commission plan would be published shortly and that there would be no significant changes to the sales commission plan.

22.   During the first quarter of 2022, the plaintiff continued to work and sell the defendant's products to its customers.

23.   By the end of the first quarter of 2022, the plaintiff had earned approximately $124,000 in commission according to the terms of the sales commission plan to which the parties had agreed.

24.   On March 20, 2022, the defendant presented the plaintiff and the other sales managers with a new sales commission plan. The new sales commission plan eliminated any commission on repeat sales. This change, which the defendant announced would be implemented retroactively, reduced the plaintiff's

commissions for the first quarter of 2022 by over ninety-five percent (95%).

25.     On March 20, 2022, the defendant instructed the plaintiff to sign the 2022
        Sales Commission Plan document, which would be effective retroactively to
        January 1, 2022.

26.     The plaintiff refused to sign or to agree to the 2022 Sales Commission Plan
        when it was presented to her because she had not agreed to retroactive changes
        to her commission structure or to substantial changes to the sales commission
        plan to which she had agreed. The plaintiff did want to sign a document which
        might be construed as agreeing to those terms.

27.     The plaintiff asked to be paid and expected to be paid the commissions that
        she had earned during the first quarter of 2022 based on the sales commission
        plan to which she had agreed when she was hired and which she was
        repeatedly told during the first quarter of 2022 would remain in place without
        significant changes.

28.     On or about March 20, 2022, Brad Hart, BioGX Director of Sales, told the
        plaintiff that if she did not sign the 2022 Sales Commission Plan and agree to
        this sales commission plan retroactively, then she would be terminated.

29.    Over the next few weeks, Hart repeatedly told the plaintiff that if she did not
sign the 2022 Sales Commission Plan and agree to this commission structure
retroactively, then she would be terminated.

30.    On or about April 15, 2022, Hart once again told the plaintiff that if she did
not sign the 2022 Sales Commission Plan and agree to the new commission
structure retroactively, then she would be terminated.

31.    On April 15, 2022, the plaintiff emailed Hart and asked about her commission
payments. The plaintiff complained: "I was told I would be fired if I don't
sign an agreement." Hart responded and falsely denied that he had told her
several times she would be fired if she did not sign the 2022 Sales Commission
Plan. Hart falsely claimed that the plaintiff had misunderstood him and, for
the first time, offered to let her work for her base salary but without receiving
any commission payments.

On April 18, 2020, Shahin Iqbal, Senior Vice President, Global Operations,
emailed the plaintiff and repeated that the defendant refused to pay the
plaintiff according to the agreed-upon commission structure for the first
quarter of 2022. Iqbal, for the first time, informed the plaintiff that the
defendant was willing to pay her first quarter commission but only according
to the terms of the 2022 Sales Commission Plan. Iqbal informed the plaintiff

that, going forward, the plaintiff would not be eligible for any commission payments unless she signed the 2022 Sales Commission Plan.

32.    On April 19, 2022, Iqbal informed the plaintiff, for the first time, that the defendant "intends" to pay the plaintiff commission for the first quarter of 2022 according to the 2022 Sales Commission Plan whether she signed that document or not. Iqbal further stated that he interpreted the plaintiff's email to mean she intended to terminate her employment and offered to provide more information on how she could do so.

33.    On April 22, 2022, Uri Nystrom, Human Resources Manager, told the plaintiff that she was terminated because she had abandoned her job.

34.    On April 29, 2022, counsel for the defendant, John Holmes, sent a letter to the plaintiff with the caption "**Your Violations of Restrictive Covenants with BioGX**". Attachment 2 (bold in original). The letter falsely alleged, *inter alia*, that the plaintiff had "taken a job with or performed work for Atila BioSystems, a direct competitor of BioGX." *Id.* The letter also falsely alleged that the plaintiff "ha[d] been directly soliciting business from the Company's customers since your termination last week."

35.    This letter instructed the plaintiff to: (1) cease and desist from all allegedly unlawful conduct; (2) preserve all evidence of communications with "any

competitors or actual or potential business partners" of the defendant; and (3) immediately return any company property, such as her company issued computer.

36.    The plaintiff had already returned her company-issued computer by the time she received the defendant's letter.

37.    Upon information and belief, Atila Biosystems ("Atila") is not a "competitor" of the defendant due to the minimal of overlap between the products offered by the defendant and the products offered by Atila. As such, the defendant does not have a protectible interest which it can enforce under Ala. Code § 8-1-190, *et seq.*

38.    Upon information and belief, the defendant's customers and Atila's customers purchased products based upon the technical specifications of the products and pricing rather than because of the personal relationships between the customers and the sales representatives. As such, the defendant does not have a protectible interest which it can enforce under Ala. Code § 8-1-190, *et seq.*

## Count One
## (Alabama Sales Commission Act)

39.    The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

10

40.   The defendant, BigGX, Inc., is a principal which engages in the business of manufacturing, producing, importing, or distributing products for sale to customers who purchase the products for resale.

41.   The defendant utilizes sales representatives, *a.k.a.*, Molecular Sales Managers, to solicit orders for the product or products.

42.   The defendant compensates the sales representatives, in part, by paying them commissions on their sales.

43.   The plaintiff was a sales representative who solicited, on behalf of the defendant, orders for the purchase at wholesale of the products of the defendant.

44.   At the time the defendant offered the plaintiff employment, it promised to compensate her with a base salary plus substantial commissions, *i.e.*, a commission structure in which would earn $200,000 in commission each year.

45.   The plaintiff accepted the position on that basis.

46.   During January, February and March 2022, the defendant failed to publish a written sales commission plan.

47.   During January, February and March 2022, the defendant's managers repeatedly assured the plaintiff and the other Molecular Sales Managers that

the new commission structure would be virtually the same as the existing commission structure.

48.   On March 20, 2022, the defendant published a new sales commission plan which stated that the defendant had retroactively changed the sales commission plan and would not pay commissions on repeat orders, retroactive to January 1, 2022.

49.   The defendant refused to pay the plaintiff commission she had earned during the first quarter of 2022 in violation of Alabama law.

WHEREFORE, PREMISES CONSIDERED, the plaintiff requests that this Court:

(a)   Enter judgment against the defendant for all commissions owed;

(b)   Award the plaintiff treble damages as required by Ala. Code §8-24-3;

(c)   Award the plaintiff attorneys' fees and costs as required by Ala. Code §8-24-3;

(d)   Award the plaintiff pre-judgment and post-judgment interest to the extent allowed by law; and

(e)   Award the plaintiff any and all other relief deemed fair and equitable by this Court and/or a jury.

## Count Two
### (Fraudulent Suppression)

50.    The plaintiff re-alleges all of the allegations in the complaint and incorporates
        the same by reference herein.

51.    At the time the defendant offered the plaintiff employment, it promised to
        compensate her with a base salary plus substantial commissions, *i.e.*, a
        commission structure in which would earn $200,000 in commission each year.

52.    The plaintiff accepted the position on that basis.

53.    During January, February and March 2022, the defendant's managers
        repeatedly assured the plaintiff and the other Molecular Sales Managers that
        the new commission structure would be virtually the same as the existing
        commission structure.

54.    On March 20, 2022, the defendant presented the plaintiff with a sales
        commission plan which eliminated commissions on repeat orders
        retroactively to January 1, 2022. The defendant' refused to pay the plaintiff
        approximately $124,000 in commissions earned during that time period.

55.    The defendant's representations at the time she was hired and during January,
        February, and March 2022 were false.

56.    The defendant knew the representations were false or was reckless about the
        truth of those representations.

13

57.   The defendant intended for the plaintiff to rely on those statements.

58.   The plaintiff did in fact rely upon those statements.

59.   The plaintiff was harmed by her reliance upon those statements or the plaintiff's reliance upon the defendant's misrepresentation was a substantial factor in causing the harm suffered.

WHEREFORE, PREMISES CONSIDERED, the plaintiff requests that this Court:

(a)   Enter judgment against the defendant for loss of earnings;

(b)   Award the plaintiff compensatory and punitive damages in the form of money damages in an amount to be determined by the Court and/or a jury as necessary to restore the plaintiff to her prior position and to prevent unjust enrichment by the defendant;

(c)   Award the plaintiff attorneys' fees and costs incurred in this action to the extent allowed by law;

(d)   Award the plaintiff pre-judgment and post-judgment interest to the extent allowed by law; and

(e)   Award the plaintiff any and all other relief deemed fair and equitable by this Court and/or a jury.

## Count Three
## (Promissory Fraud)

60.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

61.   At the time the defendant offered the plaintiff employment, it promised to compensate her with a base salary plus substantial commissions, *i.e.*, a commission structure in which would earn $200,000 in commission each year.

62.   The plaintiff accepted the position on that basis.

63.   During January, February and March 2022, the defendant's managers repeatedly assured the plaintiff and the other Molecular Sales Managers that the new commission structure would be virtually the same as the existing commission structure.

64.   On March 20, 2022, the defendant presented the plaintiff with a sales commission plan which eliminated commissions on repeat orders retroactively to January 1, 2022. The defendant' refused to pay the plaintiff approximately $124,000 in commissions earned during that time period.

65.   The defendant's representations at the time she was hired and during January, February, and March 2022 were false.

66.   The defendant knew the representations were false or was reckless about the truth of those representations.

67.  The defendant intended for the plaintiff to rely on those statements.

68.  The plaintiff did in fact rely upon those statements.

69.  The plaintiff was harmed by her reliance upon those statements or the plaintiff's reliance upon the defendant's misrepresentation was a substantial factor in causing the harm suffered.

WHEREFORE, PREMISES CONSIDERED, the plaintiff requests that this Court:

(a)  Enter judgment against the defendant for loss of earnings;

(b)  Award the plaintiff compensatory and punitive damages in the form of money damages in an amount to be determined by the Court and/or a jury as necessary to restore the plaintiff to her prior position and to prevent unjust enrichment by the defendant;

(c)  Award the plaintiff attorneys' fees and costs incurred in this action to the extent allowed by law;

(d)  Award the plaintiff pre-judgment and post-judgment interest to the extent allowed by law; and

(e)  Award the plaintiff any and all other relief deemed fair and equitable by this Court and/or a jury.

## Count Four
## (Negligent Suppression)

70.     The plaintiff re-alleges and incorporates by reference all paragraphs of this Complaint as fully set forth herein.

71.     The defendant made negligent misrepresentations to the plaintiff, which induced her accept the defendants' offer of employment.

72.     When the defendant made these representations to the plaintiff, the defendant knew that these representations would be material to the plaintiff and that he would justifiably rely on these representations.

73.     The plaintiff actually and reasonably relied on the defendant's negligent misrepresentations to her detriment.

74.     As a proximate result of the wrongful conduct of the defendant, the plaintiff suffered damages and has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities in her field and damage to his professional reputation, all in an amount subject to proof at trial.

75.     As a proximate result of the wrongful acts of the defendants, the plaintiff has suffered and continues to suffer emotional distress, humiliation, mental anguish and embarrassment, all for a period in the future not presently ascertainable and in an amount subject to proof at the time of trial.

76.   In doing the acts herein alleged, the defendant acted with oppression, malice, and/or conscious disregard of the plaintiff's rights. As such, the plaintiff is entitled to punitive damages.

WHEREFORE, PREMISES CONSIDERED, the plaintiff requests that this Court:

(a)   Enter judgment against the defendant for loss of earnings;

(b)   Award the plaintiff compensatory and punitive damages in the form of money damages in an amount to be determined by the Court and/or a jury as necessary to restore the plaintiff to her prior position and to prevent unjust enrichment by the defendant;

(c)   Award the plaintiff pre-judgment and post-judgment interest to the extent allowed by law; and

(d)   Award the plaintiff any and all other relief deemed fair and equitable by this Court and/or a jury.

## Count Five
## (Breach of Contract)

77.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

78.   On or about October 2020, the plaintiff and the defendants entered into a contract in which the defendants agreed to pay the plaintiff a base salary plus

18

commission of three percent (3%) on new sales and two percent (2%) on repeat sales. Commission were capped at $200,000 per year.

79. The plaintiff accepted the position based on the opportunity to earn a base salary plus substantial commissions.

80. During the plaintiff's employment, she performed work which was valuable and essential to the defendant's business. The plaintiff's efforts generated revenue for the defendant.

81. According to the terms of the verbal contract, the plaintiff was entitled to her salary plus substantial commissions for the work she performed on behalf of the defendant.

82. The defendant failed to promptly publish a written commissions document, but the defendant's managers repeatedly assured the plaintiff and the other Molecular Sales Managers that the new commission structure would be virtually the same as the existing commission structure.

83. On March 20, 2022, the defendant presented the plaintiff with a sales commission plan which eliminated commissions on repeat orders retroactively to January 1, 2022. The defendant' refused to pay the plaintiff approximately $124,000 in commissions earned during that time period.

84. The defendant breached the parties' contract when it refused to pay the plaintiff commissions owed to her for work performed during the first quarter of the year.

85. The plaintiff has suffered damages as a result of said breach. The plaintiff seeks all damages allowed by law for the defendant's breach of this contract.

WHEREFORE, PREMISES CONSIDERED, the plaintiff requests that this Court:

(a)   Enter judgment against the defendant for all amounts owed;

(b)   Award the plaintiff pre-judgment and post-judgment interest to the extent allowed by law; and

(c)   Award the plaintiff any and all other relief deemed fair and equitable by this Court and/or a jury.

## Count Six
### (Unjust Enrichment)

86. The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

87. On or about October 1, 2020, the plaintiff and the defendant entered into a contract in which the defendant agreed to pay the plaintiff a base salary and commissions.

88.    During the plaintiff's employment, she performed which was valuable and even essential to the defendant's business. The plaintiff's efforts generated revenue for the defendants.

89.    According to the terms of the parties' contract, the plaintiff was entitled to compensation for work performed during the first quarter of 2022.

90.    The defendant refused to pay her commissions for sales generated during the first quarter of 2022.

91.    Upon information and belief, the defendant has continued to receive the benefit of the plaintiff's efforts.

92.    The defendant breached the contract when it retroactively made substantial changes to the plaintiff's commission structure and failed to pay her those commissions for the first quarter of 2022. The defendant has been unjustly enriched because it has accepted payments from customers but violated the terms of the contract when it failed to pay the commissions owed to the plaintiff.

WHEREFORE, PREMISES CONSIDERED, the plaintiff requests that this Court:

(a)    Enter judgment against the defendant for all amounts owed;

(b)    Award the plaintiff compensatory and punitive damages in the form of

money damages in an amount to be determined by the Court and/or a jury as necessary to restore the plaintiff to her prior position and to prevent unjust enrichment by the defendant;

(c)     Award the plaintiff pre-judgment and post-judgment interest to the extent allowed by law; and

(d)     Award the plaintiff any and all other relief deemed fair and equitable by this Court and/or a jury.

## Count Seven
## (Declaratory Judgment)

93.   The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

94.   In Alabama, non-competition agreements are void unless: (1) the employer has a protectible interest; (2) the restriction is reasonably related to that interest; (3) the restriction is reasonable in time and place; and (4) the restriction imposes no undue hardship.

95.   The defendant does not have a protectible interest. The Agreement does not define the phrase "in competiton with the business of the Company". However, the cease and desit letter the defendant sent to the plaintiff incorrectly asserts that Atila Biosystems as a company covered by the terms of the Agreement. Upon information and belief, Atila Biosystems

96.     The restrictions in the Agreement are not reasonable. The Agreement extends to 36 months after termination and prohibits the plaintiff from working for "any business that is in competition with the business of the Company, its divisions and affiliates, within any state in which the Company then does business" without defining what "competition" means or stating with any precision what is "the business of the Company" or who its "affiliates" might be.

97.     The restrictions in the Agreement impose an undue hardship. The defendant in its letter to the plaintiff is asserting that the plaintiff is prohibit from doing any work for "any business that is in competition with the business of the Company" without defining what that language means. The plaintiff has substantial experience in medical sales and cannot find comparable work outside of this field for comparable pay. The defendant is attempting to preclude the plaintiff from working in an entire industry subjecting her to impoverishment. This is unduly burdensome and unenforceable.

WHEREFORE, PREMISES CONSIDERED, the plaintiff requests that this Court:

(a)     Enter an Order declaring a justiciable controversy exists concerning the validity and enforceability of the Agreement;

(b)     Declare the Agreement to be invalid and unenforceable;

(c)     Award attorneys' fees incurred by the plaintiff; and

(d)     Award such other, further and generalized relief the Court deems proper.

## Count Seven
### (Injunctive Relief)

98.     The plaintiff re-alleges all of the allegations in the complaint and incorporates the same by reference herein.

99.     Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the plaintiff seeks a temporary restraining order, interlocutory injunction and permanent injunction against the defendant, enjoining it from further attempts to enforce the Agreement and further interference with the plaintiff's efforts to seek employment.

100.    The court may issue a preliminary injunction where the moving party demonstrates "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Nnadi v. Richter*, 976 F. 2d 682, 690 (11th Cir. 1992); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

101.   The plaintiff has a substantial likelihood of success on the merits of this cause, and the entry of a temporary injunction and/or preliminary injunction will not conflict with the public interests.

102.   The plaintiff will be irreparably injured if the defendant is allowed to enforce the Agreement. The plaintiff has a family that relies on her income for their support. The plaintiff is currently unemployed and has lost over $124,0000 in commission because of the defendant's actions. If the plaintiff cannot seek employment for thirty-six (36) months, the plaintiff will suffer even greater financial harm.

WHEREFORE, PREMISES CONSIDERED, the plaintiff requests that this Court:

(a)   Temporarily, and following a hearing, permanently, enjoin the defendant from further attempts to enforce the Agreement or interfere with the plaintiff's efforts to seek suitable future employment'

(b)   Award all attorney's fees incurred by the plaintiff; and

(c)   Award all other damages that the plaintiff is entitled to recover under Alabama law.

Respectfully submitted,

*/s/ H. Wallace Blizzard*
H. Wallace Blizzard
ASB-8969-B59H
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
wblizzard@wigginschilds.com
205.314.0593 (phone/fax/text)

*Attorney for Plaintiff*

## JURY DEMAND

## PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY A JURY.

Plaintiff requests this Honorable Court to issue the attached Summons for Plaintiff to serve Defendant with the following: Summons, Complaint.

**Defendant's Address:**

BioGX, Inc.
c/o Michael C L Vickery
1500 1st Ave North, Suite L-136
Birmingham, AL 35203